**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA**

SHAVONNE ROBERTS and )
MICHAEL MALLE, individually, )
and on behalf of all others similarly )
situated, )
         )
        Plaintiffs, )
         )        Case No.:
v. )
         )        **JURY TRIAL DEMANDED**
IMPACT HOLDINGS TAMPA, LLC )
d/b/a KELLER WILLIAMS )
SOUTH TAMPA, )
         )
Serve registered agent at: )
Ryan A. Featherstone, Esq. )
22 South Links Avenue, Suite 300 )
Sarasota, Florida 34236 )
         )
        Defendant. )
_____/

**CLASS ACTION COMPLAINT**

COMES NOW Plaintiffs Shavonne Roberts and Michael Malle, individually, and on behalf of all others similarly situated, and through their counsel of record, submit this Class Action Complaint against Defendant Impact Holdings Tampa, LLC d/b/a Keller Williams South Tampa, and states:

**INTRODUCTION AND BACKGROUND ON THE TCPA**

1.     Plaintiffs Shavonne Roberts and Michael Malle (collectively "Plaintiffs", or "Roberts" or "Malle") bring this case to protect their privacy rights, namely the right to be left alone from unwanted telemarketing phone calls.

2.      Plaintiffs bring this suit to get telemarketers like Impact Holdings Tampa, LLC d/b/a Keller Williams South Tampa ("Defendant"), to stop incessantly calling their phones and the putative class members' phones even though Plaintiff and the putative class members registered their phone numbers on the National Do-Not-Call Registry ("DNC List").

3.      Plaintiffs also bring this suit against Defendant to get Defendant to stop placing prerecorded voice calls, *i.e.*, robocalls, to their phones and the phones of the putative class members despite not having "prior express written consent" or any other form of consent to place such calls.

4.      In 1991, after passage with bipartisan support in Congress, President George H.W. Bush signed the Telephone Consumer Protection Act ("TCPA") into law, to protect consumers' privacy rights, namely, the right to be left alone from unwanted telemarketing calls. A leading sponsor of the TCPA described unwanted telemarketing calls as "the scourge of modern civilization." 137 Cong. Rec. 30821 (1991).

5.      The TCPA prohibits unsolicited prerecorded or artificial voice calls. Specifically, the TCPA provides that each person who receives a prerecorded or artificial voice call in violation of the TCPA is entitled to recover $500 per call, and up to $1,500 per call if the TCPA is willfully or knowingly violated. *See* 47 U.S.C. § 227(b)(1)(A); 47 C.F.R. § 64.1200(a).

6.      The TCPA also affords special protections for people whose phone numbers are on the DNC List. Specifically, the TCPA provides that each person who

receives more than one phone call after being registered on the National Do Not Call Registry for 30 days is entitled to recover $500 per call, and up to $1,500 per call if the TCPA is willfully or knowingly violated. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

7.     Florida law provides similar protections to the TCPA through the Florida Telephone Solicitation Act ("FTSA").

8.     Since 2003, persons who register their cell phone numbers on the DNC List are considered to be "residential subscribers" for the purpose of Section 227(c)(5) and the DNC List. *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14039 (2003) ("we will presume wireless subscribers who ask to be put on the national do-not-call list to be 'residential subscribers.'")

9.     Highlighting the problems of incessant telemarketing calls, in 2025 alone, approximately 52.5 billion robocalls were placed in the United States. RobocallIndex.com, YouMail Robocall Index, https://robocallindex.com/history/time (last visited Jan. 20, 2026).

10.     Decades after the TCPA was enacted, it is still unfortunately the case that "month after month, unwanted telemarketing calls and texts top the list of consumer complaints received by the [Federal Communications] Commission." *Omnibus TCPA Order*, 30 FCC Rcd. 7961, 7964 (F.C.C. July 10, 2015).

11.      In fact, in 2021 alone, there were over five million do-not-call complaints to the FTC about unwanted telemarketing calls.  Federal Trade Commission, *FTC Issues Biennial Report to Congress on the National Do Not Call Registry* (Jan. 5, 2022)

*available at*: https://www.ftc.gov/news-events/news/press-releases/2022/01/ftc-issues-biennial-report-congress-national-do-not-call-registry (last visited Aug. 1, 2023).

12. The private right of enforcement of the TCPA is critical to stopping the proliferation of these unwanted telemarketing calls. For example, while the Federal Communications Commission levied over $200 million in penalties against telemarketers between 2015 and 2018, it collected less than $7,000 of that amount. *See* Sarah Krouse, *The FCC Has Fined Robocallers $208 Million. It's Collected $6,790*, THE WALL STREET JOURNAL, March 28, 2019, https://www.wsj.com/articles/the-fcc-has-fined-robocallers-208-million-its-collected-6-790-11553770803.

## JURISDICTION AND VENUE

13. This Court has subject-matter jurisdiction over the TCPA claims in this action under 28 U.S.C. § 1331, which grants this court original jurisdiction of all civil actions arising under the laws of the United States, and supplemental jurisdiction over Plaintiffs' state law claims.

14. This Court has personal jurisdiction over Defendant because Defendant is a Florida limited liability company, transacts business in Florida, places telemarketing phone calls to persons in Florida, utilizes Florida area codes in association with these telemarketing calls and for the reasons otherwise set forth in this Complaint.

15. Venue is proper under 28 U.S.C. § 1391(b)(2) as a substantial portion of the events giving rise to the claim arose in this District.

## PARTIES

16.    Roberts is an individual who at all times material to this Complaint resided in and was a citizen of Tampa, Florida.

17.    Roberts is the owner of a cell phone.  Her cell phone number is 813-XXX-8755. Roberts's full telephone will be provided to counsel for Defendant. It is not being provided in this public document to prevent further unwanted and unconsented use of her phone number.

18.    Roberts registered her phone number on the DNC List in 2012, to obtain solitude from unwanted telemarketing calls.

19.    Roberts's cell phone number is her residential personal phone number and is not a business line.

20.    The monthly bill associated with Roberts's phone number is issued in Roberts's name, and not in the name of a business.

21.    Roberts uses her cell phone primarily for residential purposes, such as communicating with friends and family members.

22.    Malle is an individual who at all times material to this Complaint resided in and was a citizen of Port Richey, Florida.

23.    Malle is the owner of a cell phone. His cell phone number is 412-XXX-7525. Malle's full telephone will be provided to counsel for Defendant. It is not being provided in this public document to prevent further unwanted and unconsented use of his phone number.

24.    Malle registered his phone number on the DNC List on or about June 29, 2003, to obtain solitude from unwanted telemarketing calls.

25.    Malle's cell phone number is his residential personal phone number and is not a business line.

26.    The monthly bill associated with Malle's phone number is issued in Malle's name, and not in the name of a business.

27.    Malle uses his cell phone primarily for residential purposes, such as communicating with friends and family members.

28.    Defendant is a Florida limited liability company that at all times relevant to this Complaint has been in good standing to transact business in Florida, and throughout the United States.

29.    Defendant's website is www.tampasouth.com.

30.    Defendant's website states that "Aaron Barker" is the "Founder" of "Tampa South Group."

31.    Defendant's website states that Mr. Barker is a "real estate agent" who "specializes in helping buyers and sellers in South Tampa."

32.    The bottom of Defendant's website includes Mr. Barker's license number, his email address and states, "Keller Williams South Tampa – Tampa South Group."

33.    Defendant's website includes listings of homes available for purchase.

34.    Defendant's website includes information for prospective clients about selling a home.

35.    Defendant's website includes information about how to invest in homes with Defendant.  These investments include, among other things, "fix and flip," "buy & hold" and "short term rentals."

36.    Part of Defendant's business is to make commissions off the homes it sells and that which its clients purchase.

37.    Mr. Barker also has a LinkedIn profile, which identifies him as Defendant's "founder."

38.    Mr. Barker's LinkedIn profile states that he helps "very successful people buy, sell and invest in real estate."

39.    Defendant's real estate associates, like Mr. Barker, place telephone calls to Florida residents to sell and promote Defendant's services and/or to solicit information from consumers that may be used to sell or promote these consumers services.

40.    Florida Statute 475.01(1)(b) provides that a "Broker Associate . . . operates as a sales associate in the *employ* of another." (emphasis added)

41.    Likewise, Florida Statute 475.01(1)(j) provides that a "Sales Associate" "act[s] under the direction, *control*, or management of another." (emphasis added)

42.    In addition, Florida Statute 475.01(2) expressly defines "employ" "to describe the relationship between a broker and a sales associate, include[ing] an independent contractor relationship when such relationship is intended by and established between a broker and a sales associate."

7

43.     Defendant gave express or implied permission to its sales associates to use Defendant's name when marketing and soliciting prospective clients and properties. Regardless, Defendant benefited, or intended to benefit, from any monies derived from the telemarketing calls at issue that were placed by its brokers and agents.

44.     Defendant required its sales teams, brokers, and sales associates to market and solicit prospective clients and properties only on behalf of Defendant, and it prohibited its sales teams, brokers, and sales associates from engaging in the sale of real estate on behalf of any other real estate company while also working for Defendant.

45.     Defendant knows, and requires, that its agents hold themselves out to the public as being part of, a broker for, and/or agent of, Defendant.

## DEFENDANT'S INCESSANT TELEMARKETING CALLS TO ROBERTS AND MALLE

46.     Roberts was not in the market for Defendant's real estate services; nor did she provide any form of permission or consent to Defendant to place calls to her concerning such services let alone prerecorded telemarketing calls.

47.     Yet, despite not having any form of permission to call Roberts, on June 21, 2023, at approximately 4:33 p.m. Defendant or someone calling on Defendant's behalf called Roberts and left Roberts a prerecorded voicemail stating, "Hey there. This is Robbie with Keller Williams Tampa South Group.  I work for Aaron Barker. I just got some quick questions for you" and asked to be called back at phone number "813-467-8625."

48.     Roberts received the exact same prerecorded voicemail from Defendant with the exact same message from the same female on June 21, 2023, at 4:42 p.m, June 29, 2023, at 9:52 a.m., and July 21, 2023, at 4:33 p.m.

49.     On information and belief, Roberts received additional calls beyond those identified here from or on behalf of Defendant.

50.     Malle was not in the market for Defendant's real estate services, nor did he provide any form of permission or consent to Defendant to place calls to him concerning such services, let alone prerecorded telemarketing calls.

51.     Yet, despite not having any form of permission to call Malle, and despite his phone number being registered on the DNC List, on August 16, 2024, at approximately 8:13 a.m. Malle received a phone call on his cell phone from Defendant or someone acting on Defendant's behalf.

52.     The phone number that appeared on Malle's phone indicated that the call originated from phone number 813-692-6227.

53.     Malle's phone rang and the caller with a female voice left a voicemail and asked to be called at "813-467-8625." The call appeared to be a prerecorded voice as the voicemail contained the exact same female voice and the same message that sounded on the calls received by Roberts.

54.     Upon calling back the number, a recording played the same female voice as left on the voicemail.  The recording states, "Hey there this is Robbie with Keller Williams Tampa South Group.  I work for Aaron Barker. Sorry I can't take your call

9

right now but leave a message and I'll get back to you as soon as I can. Thanks, and have a great day."

55.    Between August 20 and 26, 2024, Malle received at least an additional four calls from a phone number that appeared on his phone as originating from phone number 813-692-6227.

56.    Malle also received calls originating from this same phone number in 2024 on August 27 (twice), September 4 (twice), September 19 (twice), September 25 (twice), September 27, November 4 (twice) and November 20.

57.    These calls were placed for the purpose of soliciting Defendant's real estate services, as Defendant would have no other reason to contact Malle or Roberts.

58.    Defendant or someone acting on its behalf likely placed calls to hundreds if not thousands of persons (*i.e.* putative class members), like Malle and Roberts, without first obtaining said persons' "prior express written consent," or any form of consent, to receive such calls.

59.    Defendant or someone acting on its behalf likely placed prerecorded voice calls to hundreds if not thousands of persons (*i.e.* putative class members) whose phone numbers were on the DNC List.

60.    Defendant's conduct of calling Plaintiffs and the putative class members violated their privacy rights as they were subjected to annoying and harassing calls.

61.    Defendant's conduct of calling Plaintiffs and the putative class members intruded upon Plaintiffs and the putative class members' right to be left alone, and their interest of seclusion.

10

## DIRECT AND VICARIOUS LIABILITY

62.    Because Defendant disclosed its identity on the calls and provided a callback number directly to Defendant, Defendant directly placed the calls.

63.    Regardless, even if some or all of the calls were physically placed by a third-party, because they were placed on behalf of Defendant, Defendant is vicariously liable for those calls.

64.     On May 9, 2013, the FCC determined that using a third party to place calls is not a basis for avoiding liability. The FCC's Declaratory Ruling that held that sellers may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside of the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain relief. As the FTC noted, because "[s]ellers may have thousands of "independent" marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*In re: Dish Network, LLC,* 28 F.C.C. Rcd. 6574 at 6588 (May 9, 2013) (internal citations omitted).

11

65. Moreover, the May 2013 FCC ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal actual agency and immediate direction and control over third parties who place a telemarketing call. *Id*. at 6587 n. 107.

66. The evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.,* at 6593.

67. If Defendant directly placed the calls at issue to Plaintiffs, Defendant is directly liable for those calls.

68. However, Defendant may have hired, encouraged, permitted, and enjoyed the benefits of mass telemarketing by third-party telemarketers that are currently unknown to Plaintiffs and only known to Defendant.

69. In that event, Defendant's third-party telemarketers had actual and/or apparent authority to act on behalf of Defendant.

70. Likewise, Defendant also ratified its agents' violations of the TCPA by accepting leads and/or deriving profit from sales initiated by unlawful robocalls, or it intended to even if a lead or call did not ultimately result in a closed deal or sale.

71. Defendant controlled or had the right to control the marketing activities of those acting on its behalf. Among other things, the calls received by Plaintiffs were substantially similar in that the calls used a similar artificial voice script and the live callers asked similar questions.

72.   Defendant acted as a principal to telemarketing agent(s) whose identity or identities are unknown at this time.

73.   Defendant is not permitted under the law to outsource and contract its way out of liability by directing and benefitting from its agents' TCPA violations.

74.   For the counts identified below, if Defendant directly placed the call(s), it is directly liable. In the alternative, to the extent any call(s) were made by a third-party agent(s) acting on Defendant's behalf, Defendant is vicariously liable for those unlawful calls.

## Class Allegations

75.   Pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), Plaintiffs bring this lawsuit as a class action on behalf of themselves, and all others similarly situated. This action satisfies the requirements of Rule 23.

76.   Plaintiffs seek to represent the following classes:

**Prerecorded Voice Class:** All persons in the United States who from four years prior to the filing of this action through class certification to whom Defendant or someone acting on its behalf placed a call, utilizing a pre-recorded or artificial voice, to the recipient's phone.

**DNC List Class:**  All persons in the United States who from four years prior to the date of the filing of this lawsuit through class certification: (1) to whom Defendant (or someone acting on its behalf) placed two or more calls during a 12-month period; (2) where the calls were made in connection with a campaign to solicit Defendant's real estate services; and, (3) whose number was registered on the Do Not Call Registry for more than 30 days at the time the calls were received; (4) where the phone number is registered to an individual, rather than a business.

**FTSA CLASS:** All persons within the State of Florida who from four years prior to the filing of this lawsuit through class certification: (1) were placed a telephonic sales call regarding Defendant's goods and/or

13

services, (2) using the same equipment or type of equipment utilized to call Plaintiffs.

77. Plaintiffs reserve the right to add administrative subclasses, or to amend the definition of the proposed classes, during the lawsuit proceedings.

78. The members of the proposed classes are so numerous that joinder of all members is impracticable. Plaintiffs reasonably believe that hundreds or thousands of people have been harmed by Defendant's actions. The phone numbers of the members of the proposed classes are readily identifiable through records available to Defendant or those acting on its behalf.

79. Most members of the proposed classes have suffered damages in an amount such that it would make filing separate lawsuits by individual members economically infeasible.

80. Defendant has called and continues to call people using artificial or prerecorded voice calls without first obtaining the recipient's prior express written consent and will continue to place telemarketing calls to persons whose numbers are registered on the DNC List. It is reasonable to expect that Defendant will continue to place such calls absent this lawsuit.

81. Common questions of law and fact exist as to all members of the proposed classes and predominate over any questions affecting only individual members. The questions of law and fact common to the proposed classes include, but are not limited to:

a. Whether the voice technology used by Defendant or on its behalf constitutes a "pre-recorded voice" and/or "artificial voice" as defined by 47 U.S.C. § 227(b);

b. Whether Defendant exercised valid methods of obtaining express written consent before making calls to consumers;

c. If Defendant did not directly place the calls at issue, whether an agency relationship exists between Defendant and its telemarketing vendor(s);

d. Whether Defendant ratified the conduct of vendor(s)/agent(s);

e. Whether Defendant or someone acting on its behalf placed prerecorded voice calls to Plaintiffs and the putative class members without the appropriate form of consent;

f. Whether Defendant's conduct violates 47 U.S.C. § 227(b);

g. Whether Defendant's conduct violates 47 U.S.C. § 227(c);

h. Whether Defendant's conduct violates the rules and regulations implementing the TCPA;

i. Whether Defendant's conduct violates the FTSA; and,

j. Whether Plaintiffs and the putative class members are entitled to increased damages and/or other damages for each violation based on the willfulness of Defendant's conduct.

82. Plaintiffs' claims are typical of the claims of the proposed class members because their claims arise from the same practice that gives rise to the claims of the members of the proposed classes and are based on the same legal theories.

83.     Plaintiffs and their counsel will fairly and adequately protect the interests of the members of the proposed classes. Plaintiffs' interests do not conflict with the interests of the proposed classes they seek to represent. Plaintiffs have retained lawyers who are competent and experienced in class action litigation, TCPA litigation and consumer law.

84.     Plaintiffs' counsel will vigorously litigate this case as a class action, and Plaintiffs and their counsel are aware of their responsibilities to the putative members of the class and will discharge those duties.

85.     A class action is superior to all individual lawsuits for this controversy. Joinder of all proposed members of the proposed class in one action is impracticable if not impossible and prosecuting hundreds or thousands of individual actions is not feasible. The size of the individual claims is likely not large enough to justify filing a separate action for each claim. For many, if not most, members of the proposed class, a class action is the only procedural mechanism that will allow recovery. Even if members of the proposed class had the resources to pursue individual litigation, that method would be unduly burdensome to the courts. Individual litigation could also result in inconsistent adjudications.

86.     In contrast, a class action is superior in that it will benefit the court and litigating parties through efficiency, economy of scale and unitary adjudication resulting from supervision of the litigation by a single court.

87.     Questions of law and fact, particularly the propriety of placing prerecorded voice calls without first obtaining prior express written consent and calling

16

phone numbers on the DNC List, predominate over questions affecting only individual members.

88.    Defendant has acted or refused to act on grounds that apply generally to the class, making final injunctive relief or corresponding declaratory relief is appropriate with respect to the class as a whole.

**Count I - Violations of the Telephone Consumer Protection Act ("TCPA")**
**47 U.S.C. § 227(b)** *et seq.* **(Artificial or Prerecorded Voice Calls – Prerecorded Voice Class)**

89.    Plaintiffs incorporate by reference the allegations of the previous paragraphs 1 through 88 as if fully stated in this count.

90.    The TCPA provides, in part:

> It shall be unlawful . . . (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an artificial or prerecorded voice . . . (iii) to any telephone number assigned to a . . . cellular telephone . . . .

47 U.S.C. § 227(b)(1)(A)(iii).

91.    The TCPA also prohibits calls using an artificial or pre-recorded voice to "any residential telephone line" without prior express written consent. 47 U.S.C. § 227(b)(1)(B).

92.    The TCPA defines a "telephone solicitation" as a "call or message for the purpose of encouraging the purchase of goods, or services which is transmitted to any person." 47 U.S.C. § 227(a)(4).

93.    The Federal Communications Commission's regulations implementing the TCPA provide that telephone solicitations cannot be made to a recipient without

the recipient's "prior express written consent." *See* FCC 12-21, CG Docket 02-278 (effective October 16, 2013); 47 C.F.R. § 64.1200(a)(2).

94.    The term "prior express written consent" as defined by the Code of Federal Regulations means "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered." 47 C.F.R. § 64.1200(f)(8)(i).

95.    The TCPA provides for a private right of action and statutory damages of $500 per violation, and up to $1,500.00 per violation.  47 U.S.C. § 227(b)(3).

96.    In addition, the TCPA allows the Court to enjoin Defendant's violations of the TCPA of placing prerecorded or artificial voice calls without first obtaining prior express written consent to place such calls. *See* 47 U.S.C. § 227(b)(3).

97.    By placing artificial or prerecorded voice calls to Plaintiffs' and the putative class members' phone numbers, Defendant violated the TCPA, including, but not limited to, 47 U.S.C. § 227(b) and the TCPA's corresponding regulations.

98.    Defendant or those acting on its behalf willfully violated the TCPA when placing prerecorded voice calls to Plaintiffs and the putative class members' phones.

99.    Plaintiffs and the putative class members are entitled to damages of up to $500.00 per violation for each call made by Defendant or those acting on its behalf

that the Court finds violates the TCPA and up to $1,500.00 per violation if the Court finds that Defendant or those acting on its behalf willfully violated the TCPA.

**PRAYER FOR RELIEF**

WHEREFORE Plaintiffs Shavonne Roberts and Michael Malle, individually, and on behalf of all others similarly situated, request that the Court:

a.      Enter an order pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), certifying the proposed Prerecorded Voice class, appointing Plaintiffs as the class representatives, and appointing Plaintiffs' counsel as class counsel;

b.      Enter judgment in favor of Plaintiffs and the Prerecorded Voice Class members for all damages and other relief available under the TCPA, 47 U.S.C. § 227(b), including injunctive relief, statutory damages of $500 per violation, and up to $1,500 per violation if Defendant willfully violated the TCPA;

c.      Enter a judgment in favor of Plaintiffs and the Class that enjoins Defendant from violating the TCPA's provisions and regulations;

d.      Enter judgment in favor of Plaintiffs and the Class for all applicable pre-judgment and post-judgment interest amounts;

e.      Enter judgment in favor of Plaintiffs and the Class for all costs; and,

f.      Award Plaintiffs and the Class such further and other relief the Court deems just and appropriate.

**Count II - Violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(c) *et seq.* (National DNC List Violations – DNC List Class)**

100.    Plaintiffs incorporate by reference the allegations of the previous

19

paragraphs 1 through 88 as if fully stated in this Count.

101.   The TCPA provides that it is a violation of the law for a person whose phone number is registered on the National Do Not Call Registry to receive more than one call on their phone "within any 12-month period by or on behalf of the same entity." *See* 47 U.S.C. §§ 227(c)(1), (c)(5); 47 C.F.R. § 64.1200(c)(ii).

102.   The penalty for each call placed in violation of the TCPA's restrictions on calling phone numbers registered on the DNC List is up to $500 per call and up to $1,500 per call if the violation is determined to be willful. *See* 47 U.S.C. § 227(c)(5).

103.   In addition, the TCPA allows the Court to enjoin Defendant's violations of the TCPA's regulations prohibiting calls to phone numbers registered on the National Do-Not-Call Registry. *See* 47 U.S.C. §§ 227(c)(5)(A).

104.   By making calls to Plaintiffs and the putative class members' phone numbers, which were registered on the DNC List, Defendant violated the TCPA, including, but not limited to, 47 U.S.C. §§ 227(c)(1) and the TCPA's corresponding regulations.

105.   Defendant or those acting on its behalf knew or should have known that Plaintiffs' and the putative class members' phone numbers were registered on the DNC List.

106.   Defendant or those acting on its behalf willfully violated the TCPA when placing the calls to Plaintiffs' and the putative class members' cell phones.

107.   Plaintiffs and the putative class members are entitled to damages of up to $500.00 per violation for each call made by Defendant or those acting on its behalf

that the Court finds violates the TCPA and up to $1,500.00 per violation if the Court finds that Defendant or those acting on its behalf willfully violated the TCPA.

## PRAYER FOR RELIEF

WHEREFORE Plaintiffs Shavonne Roberts and Michael Malle, individually, and on behalf of all others similarly situated, request that the Court:

a.     Enter an order pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), certifying the DNC List class, appointing Plaintiffs as the class representatives, and appointing Plaintiffs' counsel as class counsel;

b.     Enter judgment in favor of Plaintiffs and the DNC List Class members for all damages and other relief available under the TCPA, 47 U.S.C. § 227(c), including injunctive relief, statutory damages of $500 per violation, and up to $1,500 per violation if Defendant willfully violated the TCPA;

c.     Enter a judgment in favor of Plaintiffs and the Class that enjoins Defendant from violating the TCPA's provisions and regulations;

d.     Enter judgment in favor of Plaintiffs and the Class for all applicable pre-judgment and post-judgment interest amounts;

e.     Enter judgment in favor of Plaintiffs and the Class for all costs; and,

f.     Award Plaintiffs and the Class members such further and other relief the Court deems just and appropriate.

### Count III - Violations of the Fla. Stat. § 501.059 *et seq.* (FTSA Class)

108.     Plaintiffs incorporate by reference the allegations of the previous paragraphs 1 through 88 as if fully stated in this Count.

109.    It is a violation of the FTSA to "make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a).

110.    A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(i).

111.    "Prior express written consent" means an agreement in writing that:

1. Bears the signature of the called party;

2. Clearly authorizes the person making or allowing the placement of a telephonic sales call by telephone call, text message, or voicemail transmission to deliver or cause to be delivered to the called party a telephonic sales call using an automated system for the selection or dialing of telephone numbers, the playing of a recorded message when a connection is completed to a number called, or the transmission of a prerecorded voicemail;

3. Includes the telephone number to which the signatory authorizes a telephonic sales call to be delivered; and

4. Includes a clear and conspicuous disclosure informing the called party that:

   a. By executing the agreement, the called party authorizes the person making or allowing the placement of a telephonic

22

sales call to deliver or cause to be delivered a telephonic sales call to the called party using an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called; and

b. He or she is not required to directly or indirectly sign the written agreement or to agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

Fla. Stat. § 501.059(1)(g).

112. Defendant failed to secure prior express written consent from Plaintiffs and the FTSA Class members before placing the calls at issue.

113. In violation of the FTSA, Defendant or someone acting on its behalf made telephonic sales calls to Plaintiffs and the FTSA Class members without Plaintiffs' and the FTSA Class members' prior express written consent.

114. Defendant or someone acting on its behalf made the telephonic sales calls to Plaintiffs and the FTSA Class members utilizing an automated system for the selection or dialing of telephone numbers.

115. As a result of Defendant's conduct, and pursuant to § 501.059(10)(a) of the FTSA, Plaintiffs and the FTSA Class members were harmed and are each entitled to a minimum of $500.00 in damages for each violation.

116. To the extent Defendant's conduct is found to be knowing and/or willful violations of the FTSA, Plaintiffs and the FTSA Class are entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to §501.059(10)(a)-(b) of the FTSA.

117.     Plaintiffs are also entitled to reasonable attorney fees and costs incurred in prosecuting this action.

## PRAYER FOR RELIEF

WHEREFORE Plaintiffs Shavonne Roberts and Michael Malle, individually, and on behalf of all others similarly situated, request that the Court:

a.     Enter an order pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), certifying the FTSA Class, appointing Plaintiffs as the class representatives, and appointing Plaintiffs' counsel as class counsel;

b.     Enter judgment in favor of Plaintiffs and the FTSA Class members for all damages and other relief available under the FTSA, including injunctive relief, statutory damages of $500 per violation, and up to $1,500 per violation if Defendant willfully violated the FTSA;

c.     Enter a judgment in favor of Plaintiffs and the Class that enjoins Defendant from violating the FTSA's provisions and regulations;

d.     Enter judgment in favor of Plaintiffs and the FTSA Class for all applicable pre-judgment and post-judgment interest amounts;

e.     Enter judgment in favor of Plaintiffs and the FTSA Class for all costs; and,

f.     Award Plaintiffs and the FTSA Class members such further and other relief the Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

Please take notice that Plaintiffs demand a jury trial.

24

Dated: April 08, 2026

*/s/Joshua H. Eggnatz*
Joshua H. Eggnatz, Esq.
Florida Bar No. 0067926
Michael J. Pascucci, Esq.
Florida Bar No. 83397
**EGGNATZ PASCUCCI P.A.**
7450 Griffin Road, Suite 230
Davie, FL 33314
Tel: (954) 889-3359
jeggnatz@justiceearned.com
mpascucci@justiceearned.com

*Local Counsel for Plaintiff and the
Proposed Classes*

*/s/ Max S. Morgan*
Max S. Morgan, Esq. (PHV
forthcoming)
**THE WEITZ FIRM, LLC**
1515 Market Street, #1100
Philadelphia, PA 19102
Tel: (267) 587-6240
max.morgan@theweitzfirm.com

*Co-Counsel for Plaintiff and the Proposed
Classes*

*/s/Christopher E. Roberts*
Christopher E. Roberts, Esq. (PHV
forthcoming)
*Lead Counsel*
**BUTSCH ROBERTS & ASSOCIATES
LLC**
7777 Bonhomme Avenue, Suite 1300
Clayton, Missouri 63105
Tel: (314) 863-5700
CRoberts@butschroberts.com

*Lead Counsel for Plaintiff and the
Proposed Classes*